Evans-RL v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-047-CR

     RICKY LOWELL EVANS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 66th District Court
Hill County, Texas
Trial Court # 29,491
                                                                                                    

O P I N I O N
                                                                                                    

      Ricky Lowell Evans appeals his conviction for aggravated sexual assault and aggravated
kidnapping. Brown was found guilty by a jury, and, as a result of one prior conviction that
enhanced the range of punishment, the jury assessed punishment at fifteen years in prison on the
aggravated-sexual-assault conviction and five years in prison on the aggravated-kidnapping
conviction. The trial court sentenced Evans in accordance with the jury's verdict, with the terms
to run concurrently.
Sufficiency of the Evidence Under the Conjunctive Charge
      In points one and two, Evans contends that the evidence is insufficient to support the
convictions for aggravated sexual assault and aggravated kidnapping under the theories of criminal
responsibility in the charge given to the jury.
      The state sought to prove that Evans was criminally responsible for the two offenses either
as the primary actor or as a party. Therefore, the court's charge to the jury contained two separate
application paragraphs purporting alternative theories of criminal responsibility for each of the two
offenses charged in the indictment. However, each of the factual allegations presented in the
indictment were listed in the charge in the conjunctive rather than the disjunctive.
Aggravated Sexual Assault
      The first alternative for aggravated sexual assault instructed the jury to find the defendant
guilty if it found that:
. . . the Defendant, Ricky Lowell Evans, acting alone did then and there intentionally and
knowingly cause the penetration of the female sexual organ of [the victim] by Defendant's
penis without the consent of [the victim] by compelling [her] to submit and participate
by the use of physical force and violence and by threatening to use force and violence
against [her] and [she] believed that Ricky Lowell Evans had the present ability to
execute said threat, and Ricky Lowell Evans by acts and words threatened and placed
[the victim] in fear that death and serious bodily injury would be imminently inflicted on
[her], and said acts and words occurred in the presence of [her] . . . .

(Emphasis added).
      This was followed by the second application alternative for aggravated sexual assault, listing,
again in the conjunctive, the allegations of Evans as a party to the offense.
      The State made no objection to the charge. Absent an objection to the charge, we presume
the jury to have been correctly instructed on the theories and allegations advanced by the State. 
By not objecting to the charge, the state accepts any greater burden of proof placed upon it by that
charge.


 Although the evidence presented at trial may suggest alternate theories of criminal
culpability that could have been stated in the disjunctive, because the charge lists the factual
allegations in the conjunctive, the state must prove all elements of each offense, either acting alone
or as a party, as defined by the application paragraphs of the charge given.



      Therefore, we must determine whether the sufficiency of the evidence supports a verdict of
guilty under the charge as given. Sufficiency of the evidence must be considered from the charge
given. If the evidence does not conform to the instructions given, it is insufficient as a matter of
law.



      Evans argues that there is insufficient evidence to support a jury finding that he threatened the
victim with words under the application paragraph for aggravated sexual assault, acting alone. 
The victim testified that, as she was getting into her car at a convenience store on the evening of
1 October 1990, a man opened the passenger door, got into her car without invitation, and told
her he needed a ride because his friends had driven off and left him at the store. The victim
testified that she drove to a lake where she told the unwelcome passenger to get out of the car. 
At that point, according to her testimony, the passenger began to physically assault her, and
Evans, who had been waiting at a table near the lake, forcibly removed her from her car. She
testified that the two men then sexually assaulted her after pulling her clothes off and dragging her
through gravel to the lake. The victim also testified that Evans was the first to sexually assault
her and that she pleaded with them to stop. Then the following question and answer appears in
the record:
QYou testified—You have already testified that the one man hit you in the face and
that he was hitting on your hands and the other man was dragging you, and they drug you
down through the gravel. Do you recall at that point, up until the time that you ran to
the table where the third man was at, did they physically assault you in any other ways?
 
AYes, sir. He kept telling me that if I wouldn't fight that they wouldn't beat me.

(Emphasis added).
      Evans' argument presupposes that the victim's use of the pronoun, "He," precludes the use
of her testimony as evidence that Evans was the one who voiced the threats. However, it was
reasonable for the jury to infer that the victim was referring to Evans because he was the primary
focus of the conversation during that portion of the victim's testimony.
      Evans also points to the victim's testimony related to threats made by the other two men, but
not by Evans, after all three had sexually assaulted her at the lake. The victim testified that, after
she was forcibly taken by car to another location and repeatedly sexually assaulted, the two men
in the front seat of the car told her they would kill her if she ever told anybody. She also testified
that, Evans, who was then in the back seat with her, was trying to calm her down and assured her
that he would not let them harm her. On cross-examination the victim testified as follows:
QAnd concerning questions about going to kill you and kill your boy, Ricky had
nothing to do with that?
 
ANo, sir. He never said—he never threatened with that.

      Notwithstanding Evans' belated assurances that he would not let the other men harm her, and
his apparent reluctance to exacerbate the brutal offenses by silencing the victim, the callous words
and brutal acts of Evans were sufficient to place the victim "in fear that death and serious bodily
injury would be imminently inflicted" on her.


 Therefore, viewing the evidence in the light most
favorable to the verdict, we conclude that any rational trier of fact could find, beyond a reasonable
doubt, the essential elements of aggravated sexual assault, as submitted in the first application
paragraph of the charge.


 Having found the evidence sufficient to support a conviction for
aggravated sexual assault, acting alone, we need not consider whether the evidence is sufficient
to support a conviction, under the second alternative application paragraph for aggravated sexual
assault, as a party to the offense. Point of error one is overruled.
Aggravated Kidnapping
      Likewise, the first alternative for aggravated kidnapping instructed the jury to find the
defendant guilty if they found that:
. . . Ricky Lowell Evens, did then and there with the intent to violate and abuse sexually
[the victim], and inflict bodily injury on [her], did then and there intentionally and
knowingly abduct [her] by restricting the movements of [the victim] without her consent,
so as to interfere substantially with her liberty, by moving her from one place to another,
with the intent to prevent her liberation by holding her in a place where she was not
likely to be found . . . .

(Emphasis added).
      This was followed by the second application alternative for aggravated kidnapping, listing,
again in the conjunctive, the allegations of Evans as a party to the offense.
      Therefore, as in point one, we must determine whether the sufficiency of the evidence
supports a verdict of guilty under the charge as given. Sufficiency of the evidence must be
considered from the charge given.



      Evans argues that there is insufficient evidence to support a jury finding that he intended to
inflict bodily injury on the victim under the application paragraph for aggravated kidnapping,
acting alone. At trial the victim testified that two men, one of whom was Evans, dragged her
painfully through gravel after forcibly removing her cloths. She also testified as follows:
Q:How did they physically assault you in other ways?
 
A:They hit me with their fists and then kicked me and punched and everything.
 
Q:Where on your body were you getting hit and kicked at?
 
A:All over. They hit my face, my rib right beneath my chest, my butt.

      From the acts and events described by the victim, the jury was entitled to infer that the actions
taken by Evans were done intentionally.


 Therefore, viewing the evidence in the light most
favorable to the verdict, we conclude that any rational trier of fact could find, beyond a reasonable
doubt, the essential elements of aggravated sexual assault, as submitted in the first application
paragraph of the charge.


 Having found the evidence sufficient to support a conviction for
aggravated kidnapping, acting alone, we need not consider whether the evidence is sufficient to
support a conviction, under the second alternative application paragraph for aggravated
kidnapping, as a party to the offense. Point of error two is overruled.
Exclusion of Evidence Under Rule 412
      In points three through six, Evans contends that the trial court erred in excluding evidence of
two instances of previous sexual conduct by the victim. Rule 412(b) of the Texas Rules of
Criminal Procedure provides:
(b) In a prosecution for sexual assault or aggravated sexual assault, or attempt to
commit sexual assault or aggravated sexual assault, evidence of specific instances of an
alleged victim's past sexual behavior is also not admissible, unless:
                  (1) such evidence is admitted in accordance with paragraphs (c) and (d) of
this rule;
                  (2) it is evidence (A) that is necessary to rebut or explain scientific or
medical evidence offered by the state; (B) of past sexual behavior with the
accused and is offered by the accused upon the issue of whether the alleged
victim consented to the sexual behavior which is the basis of the offense
charged; (C) that relates to the motive or bias of the alleged victim; (D) is
admissible under Rule 609; or (E) that is constitutionally required to be
admitted; and
                  (3) its probative value outweighs the danger of unfair prejudice.



      In point three, Evans argues that, because rule 412 expressly applies to a prosecution for
sexual assault, evidence of previous sexual conduct is admissible for a limited purpose related to
the aggravated kidnapping charge.


 However, in Boyle v. State,


 the court held that pursuant to
rule 412, evidence of the victim's past sexual behavior was not admissible in a capital murder trial
in which the aggravating factor was sexual assault. Because the kidnapping charge was aggravated
by a sexually assaultive offense, the court properly applied rule 412 to exclude evidence of
previous sexual conduct. Point of error three is overruled.
      In point four, Evans argues that rule 412 of the Texas Rules of Criminal Evidence, as applied
in this case, abridges, enlarges, or modifies the substantive rights of a litigant in violation of
section 22.109(a) of the Texas Government Code.


 We disagree. Prior to the promulgation of
the Texas Rules of Criminal Evidence, the "rape-shield" provision was codified in section
22.065(a) of the Texas Penal Code.


 As the Texas Court of Criminal Appeals recently pointed
out, the admissibility of past sexual behavior evidence is still subject to a two-part test under rule
412: (1) the evidence must be material to a fact issue in the trial; and (2) its probative value must
outweigh the danger of unfair prejudice.


 However, rule 412(b) now defines when evidence of
past sexual behavior is "material" to a prosecution for a sexually assaultive offense. Rather than
determining materiality on a case-by-case basis, we look to rule 412(b)(2).


 Because rule 412(b)
does not abridge, enlarge, or modify Evans' substantive rights, point of error four is overruled.
      In points five and six, Evans argues that because his primary defense was consent, his
constitutional right to confront his accuser was denied by exclusion of evidence of two prior
instances of sexual conduct.


 The constitutional right to confront adverse witnesses is
fundamental and is of such importance that a state's interest in protecting a certain class of
witnesses from embarrassment must fall before the right of confrontation and cross-examination.



      In this case, Evans sought to show that the victim had engaged in consensual sexual conduct
with multiple partners on two prior occasions. The victim's husband testified merely that while
in Colorado, where he lived until June 1990, he observed her in a lounge-club "[d]oing what she
usually does, gets drunk, you know, and have a good time." He also testified that his wife was
wearing a "very revealing, very low cut" jumpsuit, and that he followed her to a house when she
left the bar with approximately four men. According to the victim's husband, when she entered
the house with the men, "her hair [was] fixed up and her make-up [was] proper"; but when she
left the residence a couple of hours later, her hair was "pretty messed up" and her make-up was
"a wreck." He testified that "she denied everything" when he confronted her. However, the
excluded testimony of the victim's husband did not establish by direct observation or by hearsay
account that the victim engaged in consensual sexual conduct with multiple partners.
      The court also excluded the testimony of a man who claimed to have participated, along with
another man, in consensual sexual intercourse with the victim in the summer of 1989. Evans
relies primarily upon Chew v. State,


 in support of his argument that his constitutional right to
confront adverse witnesses was denied by the exclusion of such evidence. As in Chew, the only
defense Evans relied on was based upon the consent of the victim.


 However, the appellant in
Chew presented considerable and significant evidence in a bill of exceptions, revealing numerous
separate sexual encounters between the complainant and several men at the same time, which took
place in the complainant's home, in other homes, and in vehicles.


 The witnesses in Chew
testified that the complainant not only participated willingly but at times instigated the sexual
encounters, even with men who were complete strangers.


 The trial court in Chew also excluded
the expert testimony of a psychiatrist who testified that the complainant's behavior was consistent
with a diagnosis of nymphomania and that "a female so afflicted could possibly be raped but that
it was not probable."


 The psychiatrist also testified that when females afflicted with this illness
are caught or confronted, they have a tendency "to cover up you might say but that would not stop
them usually."


 The appellant in that case made it abundantly clear from the outset of the trial
that in presenting his only defense of consent, he would rely on the suppressed evidence to show
that the complainant had a motive to lie initially about her lack of consent in order to hide her
sexual affliction from the public as well as from her jealous husband.


 On motion for rehearing
in banc, the court of appeals held that the appellant was denied the right of meaningful
confrontation.



      In this case, however, Evans failed to raise, by bill of exception or otherwise, the issue of the
victim's motive or bias. Furthermore, there is no evidence that she instigated sexual activities
with multiple partners or that she was afflicted with a sexual disorder. The facts reveal only a
suspicious husband who was never able to substantiate his fears and one other witness whose
excluded testimony of an alleged multiple-partner, but nonviolent, consensual-sexual encounter
with the victim was completely dissimilar to the brutality she experienced in this case.
      Evans' defense of consent was countered by the testimony of the State's witnesses, including
the victim.


 The State's evidence, which was already before the trial court at the time the
testimony offered by Evans was excluded, showed that Evans forcibly removed the victim from
her car, physically assaulted her, verbally threatened her, and forced her to engage in sexual
intercourse with him and two other men. An investigator for the Hill County Sheriff's Department
testified that when he reported to the hospital emergency room the victim had numerous cuts and
scrapes all over her body, a bruise on her chin, a couple of bruises around her neck, and that she
was very hysterical. The investigator's photographs of the victim were also introduced into
evidence. Furthermore, a police officer for the City of Whitney testified that, in the early morning
hours of 2 October 1990, he was stopped by a man who was driving the victim to the hospital. 
The officer, who accompanied them to the emergency room, testified that the victim had dirt and
leaves in her hair and that her face was scratched or bruised. As in Holloway, we find that,
because the excluded testimony was not material, the trial court did not abuse its discretion by
excluding testimony of the victim's prior sexual conduct.


 Point of error six is overruled.
      In point seven, Evans contends that the court abused its discretion by excluding question nine
from a sexual assault kit questionnaire completed at the hospital and admitted into evidence at trial. 
Evans claims that her admission, in response to question nine, of a prior act of intercourse was
necessary to explain scientific or medical evidence offered by the state.


 Evans argues that
because question fourteen of the questionnaire suggests the victim's belief that Evans ejaculated
in her vulva, her admission of sexual intercourse at approximately midnight on 29 September 1990
was necessary to explain the attending physician's testimony that he found only non-motile
spermatozoa in his examination of the victim. The physician also testified as follows:
Q:All right. So, if Mr. Evans had children, and he ejaculated inside her body, you
would suspect motile spermatozoa could be in her body, correct, and assuming she had
not washed?
 
A:At the time of the ejaculation I would expect them to be motile.

Evans again offered to admit an unedited copy of the questionnaire to explain the non-motile
spermatozoa. The State's objection was then overruled but the record does not reflect that the
unedited questionnaire was ever admitted into evidence. Nevertheless, we will consider whether
the court erred by excluding question nine from the copy of the questionnaire that was originally
offered by Evans and admitted by the court.
      As in Pinson v. State,


 we hold that Evans failed to demonstrate the materiality of the offered
evidence. Simply because the victim might have believed Evans ejaculated during the assault does
not automatically confer material status to the offered evidence.


 Because Evans failed to
demonstrate how the victim's sexual conduct forty-eight hours prior to the assault was pertinent
to the case, we overrule point of error seven.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 22, 1992
Do not publish